IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD WUYSCIK, DENNIS WUYSCIK, THOMAS WUYSCIK, and LAURIE WUYSCIK, Individually and in their capacities as Representatives and Beneficiaries of the Estate of NANCY WUYSCIK, | ) ) ) ) ) ) ) | Civil Action No. 14-373 |
| Petitioners, | ) ) | |
| v. | ) ) ) | United States Magistrate Judge Cynthia Reed Eddy |
| UNITED STATES DEPARTMENT OF LABOR, DIVISION OF ENERGY EMPLOYEES OCCUPATIONAL ILLNESS COMPENSTATION, | ) ) ) ) ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

**Cynthia Reed Eddy, United States Magistrate Judge**

### I.  RECOMMENDATION

Petitioners Edward Wuyscik, Dennis Wuyscik, Thomas Wuyscik, and Laurie Wuyscik seek review of the October 25, 2013 final decision issued by Respondent United States Department of Labor, Division of Energy Employees Occupational Illness Compensation ("DOL") denying their claims for survivors benefits under Part B of the Energy Employees Occupational Illness Compensation Program Act of 2000, as amended, 42 U.S.C. § 7384 et seq. ("EEOICPA" or "the Act").  They contend that DOL erred in issuing said final decision because their deceased mother, Nancy J. Wuyscik ("Mrs. Wuyscik"), meets the criteria to be deemed a covered employee within the meaning of the EEOICPA.  They also assert that they are entitled to benefits because the DOL committed various procedural errors in handling the claims.

1

As set forth below, Petitioners have failed to demonstrate that DOL's final decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Therefore, it is respectfully recommended that their Petition be denied, and that judgment be entered in favor of the DOL.

## II. REPORT

### A. Background

The purpose of the EEOICPA "is to provide for timely, uniform, and adequate compensation of covered employees and, where applicable, survivors of such employees, suffering from [beryllium-related and radiation-related] illnesses incurred by such employees in the performance of duty for the Department of Energy and certain of its contractors and subcontractors." 42 U.S.C. § 7384d(b); *see also id.,* § 7384(a)(8). Eligibility under Part B of the EEOICPA depends upon whether the individual fits within several statutory definitions, many of which incorporate other statutorily defined terms. Relevant here, it must be established that Mrs. Wuyscik was a (1) "covered employee with cancer,"[1] (2) who was an "atomic weapons

---

[1] *See* 7384*l*(1)(B). The term "covered employee with cancer" means any of the following:

    (A)    An individual with a specified cancer who is a member of the Special Exposure Cohort, if and only if that individual contracted that specified cancer after beginning employment at a Department of Energy facility (in the case of a Department of Energy employee or Department of Energy contractor employee) or at an atomic weapons employer facility (in the case of an atomic weapons employee).

    (B)(i)    An individual with cancer specified in subclause (I), (II), or (III) of clause (ii), if and only if that individual is determined to have sustained that cancer in the performance of duty in accordance with section 7384n(b) of this title.

      (ii)    Clause (i) applies to any of the following:

           (I)    A Department of Energy employee who contracted that cancer after beginning employment at a Department of Energy facility.

employee,"[2] (3) employed *by* an "atomic weapons employer,"[3] (4) *at* an "atomic weapons employer facility."[4]  If the foregoing requirements are met, Mrs. Wuyscik's survivors – the Petitioners – are entitled to a lump-sum amount of $150,000.  *Id.*, § 7384s(a), (e)(1)(B).

---

    (II)    A Department of Energy contractor employee who contracted that cancer after beginning employment at a Department of Energy facility.

    (III)    An atomic weapons employee who contracted that cancer after beginning employment at an atomic weapons employer facility.

42 U.S.C. § 7384*l*(9).

[2] The term "atomic weapons employee" means any of the following:

    (A)    An individual employed by an atomic weapons employer during a period when the employer was processing or producing, for the use by the United States, material that emitted radiation and was used in the production of an atomic weapon, excluding uranium mining and milling.

    (B)    An individual employed—

        (i)    at a facility with respect to which the National Institute for Occupational Safety and Health, in its report dated October 2003 and titled "Report on Residual Radioactive and Beryllium Contamination at Atomic Weapons Employer Facilities and Beryllium Vendor Facilities", or any update to that report, found that there is a potential for significant residual contamination outside of the period in which weapons-related production occurred;

        (ii)    by an atomic weapons employer or subsequent owner or operators of a facility described in clause (i); and

        (iii)    during a period, as specified in such report or any update to such report, of potential for significant residual radioactive contamination at such facility.

42 U.S.C. § 7384*l*(3).

[3] The term "atomic weapons employer" means an entity, other than the United States, that—

    (A)   processed or produced, for use by the United States, material that emitted radiation and was used in the production of an atomic weapon, excluding uranium mining and milling; and

    (B)   is designated by the Secretary of Energy as an atomic weapons employer for purposes of the compensation program.

The Director of the Office of Worker's Compensation Programs ("OWCP") within the DOL and his or her designees primarily have the authority to administer, interpret, and enforce the provisions of the EEOICPA. 20 C.F.R § 30.1. To receive benefits under the Act, a covered employee, or her survivor(s) if she is deceased, must file a written form with the OWCP and submit written medical evidence of the covered illness. 20 C.F.R. §§ 30.100(a), 30.101(a), 30.101(d)(2). The OWCP district offices are initially tasked with issuing recommended decisions with respect to entitlement for claims filed under Part B and Part E of the EEOICPA, which are forwarded to the Final Adjudication Board ("FAB"). *Id.*, § 30.300. Claimants may present objections to the FAB regarding the OWCP's recommended decision and may request to have a hearing before the FAB. *Id.*, § 30.310.

At any time before the issuance of its final decision, the FAB may request that the claimant submit additional evidence or argument, or return the claim to the district office for further development and/or issuance of a newly recommended decision without issuing a final decision, whether or not requested to do so by the claimant. *Id.*, § 30.317. After the FAB issues a final decision, the claimant may, within 30 days from the date of the decision, request the FAB to reconsider its decision, although the claimant is not entitled to a hearing on the reconsideration process. *Id.*, § 30.319(a)-(c). If the FAB denies a claimant's request for reconsideration, the FAB decision that formed the basis for the request will be considered "final" upon the date the request is denied, *id.*, § 30.319(c)(2), at which time the claimant is entitled to seek judicial review of the agency decision. *Id.*, § 30.319(d).

---

42 U.S.C. § 7384*l*(4).

[4] The term "atomic weapons employer facility" means a facility, owned by an atomic weapons employer, that is or was used to process or produce, for use by the United States, material that emitted radiation and was used in the production of an atomic weapon, excluding uranium mining or milling. 42 U.S.C. § 7384*l*(5).

On August 14, 2011, Nancy J. Wuyscik ("Mrs. Wuyscik"), the deceased mother of the above-captioned Petitioners, filed an individual claim for employee benefits under Part B of the Act. (R. at 952-954).[5] From June 15, 1956 until February 28, 1959, Mrs. Wuyscik worked in Apollo, Pennsylvania as a secretary, receptionist, telephone operator, and general administrative assistant for the Apollo Steel Company/Apollo Industries (hereafter "Apollo"). (R. at 952). Plaintiff's employment with Apollo is not covered under the Act because Apollo is not designated as an atomic weapons employer ("AWE"), a Department of Energy facility, or a beryllium vendor.

Apollo was located across the street from a designated AWE, Nuclear Materials and Equipment Corporation ("NUMEC"). Beginning in the late 1950's, NUMEC occupied and operated a lab in the basement of the Apollo building where Mrs. Wuyscik worked. Apollo was the parent/holding company of NUMEC, and the two companies shared a mail room at this office location and at least one common member on their respective Board of Directors. During her time working for Apollo, Mrs. Wuyscik "did typing and office work at times for NUMEC officials, when needed." (R. at 952). Decades later, Mrs. Wuyscik was diagnosed with lung cancer, as well as three primary skin cancers.[6]

On January 25, 2012, the OWCP issued a recommended decision to the FAB to accept Mrs. Wuyscik's claim. (R. at 852-855). On February 28, 2012, the FAB received a medical note

---

[5] Citations to the Administrative Record, ECF No. 12 (a redacted version omitting personal identifiers) and ECF No. 13 (the original version submitted under seal), *hereinafter*, "(R. at __)," with reference to the page number located in the bottom-right corner labeled, "Wuyscik----."

[6] Mrs. Wuyscik also worked for Aluminum Company of America (Alcoa) in New Kensington, Pennsylvania from March 1, 1956 – June 30, 1956, which is also a designated AWE. However, her employment at Alcoa is not relevant to our review, as Petitioners do not challenge the radiation dose reconstruction report from the National Institute for Occupational Safety and Health (NIOSH) which found that it was not "at least as likely as not" (50% or greater probability) that her cancer was caused by her employment at Alcoa.

from Mrs. Wuyscik's physician stating that she was considered terminal. (R. at 702). To expedite the claims processing, the FAB issued a final decision that same day approving Mrs. Wuyscik's claim based on her lung cancer, and awarded her compensation of $150,000 plus medical benefits. (R. at 567-570). The FAB approved the claim because it found that there was evidence establishing that Mrs. Wuyscik was paid by Apollo during the relevant time period while working at a facility that contained a laboratory operated by NUMEC, a designated AWE. A payment information form was mailed with the final decision to Mrs. Wuyscik, which needed to be completed in order to process the payment. (R. at 571).

When the form arrived, Mrs. Wuyscik was unresponsive and incapable of signing it. (R. at 695). The form was therefore completed and returned by Mrs. Wuyscik's son, Petitioner Edward F. Wuyscik, who also attached a "General Power of Attorney Form." (R. at 689-92). These forms were received by OWCP on March 6, 2012. Later that day, the claims examiner left a message with Mrs. Wuyscik's daughter, Petitioner Laurie Wuyscik, to notify her that the claims examiner had been advised that the power of attorney submitted by her brother Edward was flawed. (R. at 684).

The following day, the claims examiner spoke with Laurie and Edward and was informed that Mrs. Wuyscik died on March 6, 2012. (R. at 683). The regulations provide that if the covered employee dies before receiving her payment, then the OWCP must redetermine the correct disbursement of the payment by considering the eligible survivors related to the respective claim for benefits. 20 C.F.R. § 30.505(c). Therefore, the claims examiner advised them that all of their siblings would need to file survivor claims and submit birth certificates to prove eligibility and also advised them to forward their mother's death certificate. (*Id.*). Thereafter, in accordance with the claims examiner's directives, each of Mrs. Wuyscik's

6

surviving children, the Petitioners in this action, filed survivor claims under Part B of the Act, and the OWCP administratively closed Mrs. Wuyscik's claim, as she passed away before receiving her payment. (R. at 647, 673-80).

On April 20, 2012, the OWCP again recommended that the FAB approve the survivor claims based on the same findings that it made in its January 25, 2012 recommended decision. (R. at 613-16). However, on July 25, 2012, the FAB remanded the claims to the OWCP for further development, finding that the case was not in posture for a final decision. (R. at 593-95). The FAB stated the following:

> There is no evidence indicating that she worked for NUMEC or any subsequent owner or operator of the NUMEC Apollo facility. The fact that she worked in an office building where NUMEC also leased space, was present on property owned by NUMEC, or occasionally provided administrative or secretarial services for NUMEC employees, is not a sufficient basis for determining that she was an atomic weapons employee. Accordingly, I find that the district office erred in its determination that Nancy Wuyscik was an atomic weapons employee and member of the Special Exposure Cohort based on employment at NUMEC.

(*Id.*).

Petitioners were then given the opportunity to produce evidence to the OWCP that Mrs. Wuyscik was employed by NUMEC. In response, Petitioners submitted a hand-written statement from Shirley Stewart, who asserted that she "worked with and supervised" Mrs. Wuyscik while Mrs. Wuyscik was employed at Apollo Steel. (R. at 539). Ms. Stewart further indicated that sometime between 1956 and 1957, NUMEC also moved into the building, occupying the basement, "which was a forbidden area to all Apollo Steel employees." (*Id.*).

On remand, the OWCP recommended denying Petitioners' survivor claims. The OWCP ultimately found that there was no evidence that Mrs. Wuyscik was a direct employee of NUMEC. On February 11, 2013, Petitioners objected to this recommended decision and requested an informal hearing on the matter, which was scheduled for April 18, 2013. (R. at 232,

7

418). Prior to the hearing, Petitioners retained legal counsel, who submitted arguments and exhibits. (R. at 232-366). The hearing was held in Pittsburgh, Pennsylvania; testimony was elicited from each of the Petitioners, and their counsel made an opening statement and closing remarks. (R. at 188-229).

On October 25, 2013, the FAB issued a Notice of Final Decision dismissing all of Petitioners' arguments and denying their claims for survivor benefits under Part B of the Act. (R. at 133-139). Specifically, the FAB rejected Petitioners' arguments (1) that the OWCP erred in not honoring the power of attorney submitted by Edward F. Wuyscik, (2) that the OWCP erroneously closed their mother's claim and incorrectly instructed them to file separate survivor claims, (3) that the agency was estopped from denying Petitioners' survivor claims after it already approved their mother's individual claim under identical facts; and (4) that there was sufficient record evidence to conclude that Mrs. Wuyscik was also an employee of NUMEC under the "joint employer doctrine." (R. at 136-39). On November 22, 2013, Petitioners requested reconsideration of the final decision, which was denied by FAB on February 7, 2014, thereby making the October 25, 2013 FAB decision denying Petitioners' Part B survivor claims final for purposes of review. (R. at 2-5, 14-104).

This action was commenced shortly thereafter (ECF No. 1) and Petitioners subsequently filed a brief in support of their Petition. (ECF No. 16). The matter has been fully briefed, (ECF Nos. 16-18), and is ripe for recommendation.

B. <u>Standard of Review</u>

The Court reviews this challenge to the DOL's final decision denying benefits under Part B of the EEOICPA in accordance with 5 U.S.C. § 706(2)(A) of the Administrative Procedures Act to determine whether it was arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law. *See, e.g.*, *Yatsko v. O.W.C.P., U.S. D.O.L.*, 439 Fed. Appx. 122 (3d Cir. 2011); *Hayward v. U.S. D.O.L.*, 536 F.3d 376 (5th Cir.2008); *Jordan v. U.S. D.O.L.*, 352 Fed. Appx. 187 (9th Cir. 2009); *Gomez v. U.S.*, 459 Fed. Appx. 701 (10th Cir. 2012). Under this "narrow" standard of review, courts assess whether the agency "'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action.'" *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009) (quoting *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 (1983)). A reviewing court may not "substitute its judgment for that of the agency." *State Farm*, 463 U.S. at 43.

However, "[a]n agency action may be arbitrary and capricious 'if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Christ the King Manor, Inc. v. Secretary, U.S. Dept. of H.H.S.*, 730 F.3d 291, 305 (3d Cir. 2013) (quoting *State Farm*, 463 U.S. at 43). While courts remain "conscious of our responsibility to 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned,'" courts "should not 'supply a reasoned basis for the agency's action that the agency itself has not given.'" *Id.* Instead, whether the challenged agency decision satisfies this standard must be assessed based upon the "administrative record already in existence" at the time the agency decision was made. *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

C. Discussion[7]

1. Was Mrs. Wuyscik Employed by NUMEC?

"Covered employee with cancer" is defined, in relevant part, in the Act as, "[a]n individual with a specified cancer who is a member of the Special Exposure Cohort, *if and only if* that employee contracted the specified cancer after beginning employment … at an atomic weapons employer facility (*in the case of an atomic weapons employee*)." 42 U.S.C. § 7384*l*(9)(A) (emphasis added). There is no dispute that Mrs. Wuyscik's diagnosis of lung cancer is a specified cancer. Petitioners assert that Mrs. Wuyscik is a member of the Special Exposure Cohort ("SEC"), pointing to guidance that the DOL distributed to its employees in an EEOICPA Bulletin indicating that:

> The HHS SEC designation for Apollo NUMEC includes the findings that "[a]ll *Atomic Weapons Employees* who were employed at the Apollo NUMEC facility, regardless of job classification, shall be presumed to have been employed in a job which was or should have been monitored since *all NUMEC workers* had the potential to receive exposures to onsite releases of radioactive material." As such, any probative evidence that the employee was employed at the NUMEC facility in Apollo for at least 250 work days during the SEC period is sufficient to include him or her in the SEC class.

(EEOICPA Bulletin No. 08-12, R. at 63, ¶ 5) (emphasis added).

As such, in order for the individual to be considered both a "covered individual with cancer" and a member of the foregoing SEC, she must fall within the statutory definition of "atomic weapons employee," meaning that she was both (1) employed *by* an AWE, and (2) employed *at* an AWE facility. *Id.*, § 7384*l*(3)(A)–(B)(ii). These are separate requirements under the Act. Therefore, Petitioners' argument that under both the EEOICPA and the above DOL guidance Mrs. Wuyscik can be deemed an employee of NUMEC, the only relevant AWE in this

---

[7] Because both the OWCP and the FAB are divisions of the DOL, the Court may generally refer to both of them as the DOL in this section.

case, because she worked at the Apollo facility where NUMEC occupied space and operated a lab is misplaced. To prevail, Petitioners must also establish that the DOL's determination that Mrs. Wuyscik was not employed *by* NUMEC was arbitrary and capricious.

In this regard, Petitioners assert that Mrs. Wuyscik should be considered a joint employee of both Apollo and NUMEC. They acknowledge that the record evidence only shows that Mrs. Wuyscik was paid by Apollo and not NUMEC,[8] but assert that the following evidence submitted at the hearing establishes that Mrs. Wuyscik should also be considered an employee of NUMEC: (1) testimony from Petitioners that Apollo and NUMEC had a joint mailroom and Mrs. Wuyscik delivered mail to both entities on a daily basis; (2) testimony from Petitioners that Mrs. Wuyscik worked under the supervision of a NUMEC manager, usually on a daily basis, after she completed her work for her Apollo supervisor; (3) evidence that Apollo owned the building where Mrs. Wuyscik worked and where NUMEC was engaged in the business of nuclear weapons production; (4) evidence that Apollo was the parent/holding company of NUMEC; and (5) evidence that Apollo and NUMEC shared at least one common member on their respective Board of Directors. They note that the Third Circuit has expressly recognized the existence of the joint employer doctrine when analyzing the NLRA and the FLSA, *see In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litigation*, 683 F.3d 462 (3d Cir. 2012)[9] and *N.L.R.B. v. Browning-Ferris Indus.*, 691 F.2d 1117 (3d Cir. 1982),[10] and argue that this doctrine is applicable in the context of the EEOICPA.

---

[8] In 1967, Atlantic Richfield Company purchased stock of NUMEC, and in 1971, Babcock & Wilcox purchased NUMEC and is the current owner of the building where Mrs. Wuyscik worked. There are no documents in the record evincing that Mrs. Wuyscik was paid by NUMEC, Atlantic Richfield Company, or Babcock & Wilcox.

[9] "To summarize: When faced with a question requiring examination of a potential joint employment relationship under the FLSA, we conclude that courts should consider: 1) the alleged employer's authority to hire and fire the relevant employees; 2) the alleged employer's authority to promulgate work rules and

In rejecting the applicability of the joint employer doctrine as applied to Mrs. Wuyscik, the FAB provided the following analysis:

> It has long been held that employees of wholly-owned subsidiaries of atomic weapons employers do not qualify as atomic weapons employees under the EEOICPA, since such subsidiaries are considered to be separate entities that "operate as a separate functional entity and provide for employees in accordance with their own distinct corporate administrative policies and regulations." EEOICPA Bulletin No. 04-12 (2004); EEOICPA Fin. Dec. No. 4898-2004 (Dept. of Labor March 8, 2005). In this case, the employee is alleged to have worked for the parent corporation of an atomic weapons employer, but the policy applies equally since the parent and subsidiary are separate legal entities.
>
> Even if Mrs. Wuyscik could be considered in some contexts as a "joint employee" of Apollo Steel/Apollo Industries and NUMEC, such a finding would not establish coverage under the EEOICPA. Under EEOICPA Procedures, only direct employees of atomic weapons employers can be considered atomic weapons employees. Federal (EEOICPA) Procedural Manual, Chapter 02-500.2(b) (2010). Further, it is well-established that the "shared employee" doctrine does not give rise to coverage as a [*sic*] atomic weapons employee or DOE contractor employee under the EEOICPA. Thus, in EEOICPA Fin. Dec. No. 366-2002 (Dep't of Labor, June 3, 2003), the FAB held that the shared employee doctrine did not apply to Department of Defense employee who had allegedly performed work on Amchitka Island that had also benefited DOE. Similarly, in EEOICPA Fin. Dec. No. 13 183-2003 (Dep't of Labor, October 15, 2003), the FAB declined to apply the doctrine to an employee who had allegedly worked for a DOE contractor at the K-25 Plant in Oak Ridge while he was "on loan" from the Army.

(R. at 137).

---

assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; 3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and 4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes. As we have noted, however, this list is not exhaustive, and cannot be "blindly applied" as the sole considerations necessary to determine joint employment. [*Bonnette v. California Health and Welfare* Agency, 704 F.3d 1465, 1469-70 (9th Cir. 1983)]. If a court concludes that other indicia of "significant control" are present to suggest that a given employer was a joint employer of an employee, that determination may be persuasive, when incorporated with the individual factors we have set forth." 683 F.3d at 469-70.

[10] "[W]here two or more employers exert significant control over the same employees – where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment – they constitute 'joint employers' within the meaning of the NLRA." 691 F.2d at 1124.

The parties disagree as to whether the above provision cited by the FAB in the procedural manual requiring that the individual be employed "directly" by an AWE is an express rejection of the joint employer doctrine. The Court agrees with Petitioners that it is not.[11] As Petitioners note, the manual does not even mention the joint employer doctrine. Moreover, the OWCP and the FAB assessed Petitioners' claims under the Act as if Mrs. Wuyscik was capable of being employed by both Apollo and NUMEC. Therefore, the Court will consider whether the FAB's finding that Mrs. Wuyscik was not directly[12] employed by NUMEC was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

The inquiry of whether an individual is a joint employee of two or more companies is necessarily dependent upon the underlying facts of the case, *see, e.g., Enterprise,* 683 F.3d at 467 (quoting 29 C.F.R. § 791.2(a) (FLSA)); 29 C.F.R. § 825.106 (FMLA), which in these proceedings are to generally be determined by the DOL. *See Christ the King Manor,* 730 F.3d at 305 (under this restricted standard of review, courts consider "whether the agency examined the relevant data and articulated a satisfactory explanation for its action, while being careful not to substitute our own judgment for that of the agency.") (internal quotations and marks omitted). The FAB's conclusion that Mrs. Wuyscik was not directly employed by NUMEC was supported by the record before it, and it reasonably interpreted and applied the eligibility requirements of

---

[11] Petitioners alternatively argued in their reply brief that if the Court finds that this provision in the procedural manual is a rejection of the joint employer doctrine, it is entitled to minimal deference under *Skidmore v. Swift & Co.*, 323 US 134 (1944). *See also Watson v. Solis*, 2010 WL 3781710, *4 (E.D. Tenn. 2010), *aff'd* 693 F.3d 620 (6th Cir. 2012) (the EEOICPA Procedural Manual is an internal policy, not the product of formal notice and rulemaking, and thus, is entitled to *Skidmore* deference). Because the Court finds that this provision is not a rejection of the doctrine, the Court does not need to consider this alternative argument, as Petitioners' primary contention throughout the agency proceedings and in the instant matter has been that Mrs. Wuyscik was directly employed by NUMEC.

[12] In contrast, the Court notes that in some other contexts where the joint employment doctrine is applicable, indirect control is sufficient to establish joint employment. *See, e.g., Enterprise,* 83 F.3d at 468-9 (FLSA); *see also* 29 C.F.R. 825.106 (FMLA).

the EEOICPA, the applicable regulations, and its own procedures in reaching said conclusion. *See* 20 C.F.R. § 30.305 (the DOL is to apply the law, the regulations, and its procedures when evaluating eligibility under the Act).

Here, the facts of this case are unfortunate and we empathize with Petitioners; however, under this narrow standard of review, the FAB's conclusion that Mrs. Wuyscik was not a direct employee of NUMEC must stand. Petitioners understandably question the FAB's decision and argue that the result in this case is in contravention of Congress' intent that the EEOICPA be applied fairly and equitably. *See* 42 U.S.C. § 7384(a)(8). But the fact remains that the EEOICPA expressly mandates, in relevant part as applied to the present situation, that an individual qualifies as a "covered employee with cancer" *if and only if* she was employed *by* an AWE. *Id.*, § 7384*l*(1)(B), (3), (9). Petitioners assert that their claim was denied solely because there is no evidence showing that Mrs. Wuyscik was paid by NUMEC. However, the FAB denied their claim because there were "no records" of any kind indicating that Mrs. Wuyscik was directly employed by NUMEC. (R. at 137).

Petitioners were given several opportunities to submit additional evidence establishing that their mother was employed by NUMEC. They were ultimately unable to corroborate their testimony at the hearing (which was not based upon first-hand knowledge) that their mother regularly did tasks for a NUMEC supervisor. *See* (R. at 226).[13] The record evidence demonstrates that Mrs. Wuyscik worked "at times for NUMEC officials, when needed," and that Mrs. Wuyscik worked for Apollo at the location where NUMEC operated a lab in the basement, but that area was "forbidden" to all Apollo employees. (R. at 539, 952). Petitioners identify no other record evidence suggesting that Mrs. Wuyscik was directly employed by NUMEC, as

---

[13] While Petitioners assert that this testimony of Dennis Wuyscik is uncontradicted, it is apparent that it is wholly based upon statements that he heard from his mother.

required by DOL procedures, or that NUMEC otherwise exerted *significant* control over her. *See Browning-Ferris Indus.*, 691 F.2d at 1124 (significant control is required for joint employment doctrine to be applicable). Moreover, the FAB reasonably applied the relevant agency procedures and guidance providing that an individual cannot be found eligible merely because she worked for a closely related entity of a designated AWE.

In conclusion, when assessing Mrs. Wuyscik's eligibility, the FAB considered all of the evidence and arguments presented by Petitioners and rationally applied the relevant statutory definitions, regulations, DOL procedures. *See* 29 C.F.R. § 30.505. Petitioners do not identify any other evidence or argument that the FAB failed to consider. The Court therefore finds no basis to conclude that the FAB's decision that Mrs. Wuyscik was not a direct employee of NUMEC was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

2. Remaining Procedural Arguments

Petitioners' also contend that they are entitled to benefits because the DOL erred in handling Mrs. Wuyscik's individual claim, which was initially approved by final decision but subsequently closed by OWCP personnel after notification that Mrs. Wuyscik died before payment of her claim could be processed. Petitioners assert that the OWCP erroneously rejected the Power of Attorney form submitted by Mrs. Wuyscik's son, Edward F. Wuyscik, which they claim was valid under applicable Pennsylvania law. Petitioners further assert that the OWCP failed to follow the statute and applicable regulations when it closed Mrs. Wuyscik's individual claim and instructed Petitioners to separately file survivor claims. Petitioners lastly rely upon the doctrine of nonmutual offensive collateral estoppel. For the following reasons, all of these arguments should be rejected.

Relying on 20 C.F.R. § 30.505(c), the FAB found that regardless of whether the disputed Power of Attorney was valid, it did not arrive with sufficient time to allow for processing of the payment before Mrs. Wuyscik died. (R. at 136). This regulation provides:

> … [W]hen OWCP has verified the identity of every claimant who is entitled to the compensation payment, or to a share of the compensation payment, and has determined the correct amount of the payment or the share of the payment, OWCP shall notify every claimant, every duly appointed guardian or conservator of a claimant, or every person with power of attorney for a claimant, and require such person or persons to complete a Form EN–20 providing payment information. Such form shall be signed and returned to OWCP within sixty days of the date of the form or within such greater period as may be allowed by OWCP. Failure to sign and return the form within the required time may be deemed to be a rejection of the payment. *If the claimant dies before the payment is received, the person who receives the payment shall return it to OWCP for redetermination of the correct disbursement of the payment. No payment shall be made until OWCP has made a determination concerning the survivors related to a respective claim for benefits.*

*Id.*, § 30.505(c) (emphasis added). As set forth above, the EN-20 payment form with the accompanying Power of Attorney form was completed and sent by Petitioner Edward Wuyscik on March 3, 2012. The form was received by the district office of the OWCP on March 6, 2012, the same day that Mrs. Wuyscik died. The district office was informed of Mrs. Wuyscik's death the following day before payment to Mrs. Wuyscik could be processed. Accordingly, the FAB appropriately determined that because Mrs. Wuyscik died before ever receiving payment, the issue surrounding the validity of the Power of Attorney is irrelevant, given that a redetermination of the correct disbursement of payment and eligible survivors relating to Mrs. Wuyscik's claim had not yet been made.

Petitioners also point to the above regulation, 20 C.F.R. § 30.505(c), as well as 42 U.S.C. § 7384s(e)(1)(B),[14] in arguing that the DOL erred when it closed Mrs. Wuyscik's individual

---

[14] This section provides that if a covered employee who is deceased at the time of payment dies without a surviving spouse, then payment shall be made in equal shares to all children of the covered employee who are living at the time of payment.

claim and advised Petitioners to file separate survivor claims. They posit that under the plain language of these sections, if the individual claimant dies before receiving payment, then the OWCP should only determine the beneficiaries and disburse the appropriate payment to the eligible survivors, not close the decedent's claim and direct the survivors to file different claims. In rejecting Petitioners' argument, the FAB noted that the EEOICPA Procedural Manual specifically provides that under such a situation where the claimant dies before receiving payment, that claim must be closed, and survivor claims must be filed to determine that the criteria for eligibility have been established. (R. at 136). This procedure is certainly a reasonable application of 20 C.F.R. § 30.305(c) and 42 U.S.C. § 7384s(e)(1)(B).

Contrary to Petitioners' position, neither of these sections expressly provide that the district office shall not close a claim if the individual dies before payment is received. Additionally, the last sentence of 20 C.F.R. § 30.305(c) specifically requires that no payment shall be made until the OWCP makes a determination concerning the survivors related to a respective claim for benefits. In turn, the regulations provide that in the event of a deceased employee, her survivors *must* file a written claim with the OWCP to receive benefits under the Act, which will be approved if an entitlement to benefits is established. *Id.*, §§ 30.101, 30.300. It is a basic requirement that to be entitled to benefits, the deceased employee must be a covered employee as defined in the EEOICPA. Under this framework, the DOL was obligated to separately evaluate Petitioners' survivor claims rather than merely adopt its previous decision. It is truly unfortunate that the DOL issued inconsistent decisions with respect to these claims; however, Petitioners fail to establish that it was prohibited from doing so. In sum, the procedure

followed by the OWCP of closing Mrs. Wuyscik's individual claim and instructing Petitioners to file survivor claims was a logical interpretation of the Act and its regulations.[15]

Finally, Petitioners' argument that nonmutual offensive collateral estoppel prevents the DOL from issuing an unfavorable decision as to their survivor claims after it already issued a favorable decision as to Mrs. Wuyscik's individual claim is without merit. Petitioners direct the Court to the Supreme Court's decision *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979) in support of their argument. However, as the DOL correctly notes, in *United States v. Mendoza*, the Supreme Court held that *Parklane Hosiery*'s approval of nonmutual offensive collateral estoppel is not to be used against the United States Government. 464 U.S. 154, 157 (1984). Moreover, Petitioners' reliance upon *Director, OWCP v. Saulsberry*, 887 F.2d 667 (6th Cir. 1989) is unpersuasive. The DOL correctly notes that *Saulsberry* is distinguishable from the present case because unlike the regulations relating to the Black Lung Act, the EEOICPA and its regulations contain no such provision establishing that the DOL is bound by its prior final decisions involving the same underlying facts but different claims.

Similarly, Petitioners' argument that collateral estoppel is available because Petitioners were given erroneous instructions by an OWCP worker to file a separate survivors' claim is equally misplaced. Assuming *arguendo* that the instructions were erroneous, estoppel is still not available against the government. *See O.P.M. v. Richmond*, 496 U.S. 414, 415–6 (1990) (payments of money from the federal treasury are limited to those authorized by statute, and thus, erroneous oral and written advice given by a government employee to a benefits claimant does not give rise to estoppel against the government); *see also Fink v. Chao*, 395 F.Supp.2d

---

[15] The Court further Petitioners fail to identify any authority establishing that an automatic award of benefits is an appropriate remedy when 20 C.F.R. § 30.505(c) is violated. The Court cannot ignore the fact that the Act requires that the employee meet the applicable eligibility criteria contained therein. Petitioners do not identify, and the Court is not aware of, any exception providing that procedural errors of DOL employees in administering claims constitute a basis for approval of a claim.

625, 630 (N.D. Ohio 2005) ("The fact that DOL employees may have given Fink erroneous advice is irrelevant. There is no equitable estoppel against the government."). Regardless of whether the OWCP gave Petitioners erroneous advice, they cannot demonstrate that they are entitled to benefits under the Act, given that the FAB's finding that their mother was not directly employed by NUMEC was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

In light of the unfortunate facts and procedural history of this case, it cannot be questioned that Petitioners' experience while seeking survivors' benefits has surely been disappointing, and perhaps exasperating. Nevertheless, all of Petitioners' arguments here fail.

D. Conclusion

In accordance with the foregoing report, it is respectfully recommended that the Petition be denied and that judgment be entered in favor of the DOL.

Therefore, pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72, and the Local Rules for Magistrates, the parties have until August 20, 2015, to file objections to this report and recommendation. Unless Ordered otherwise by the District Judge, responses to objections are due September 3, 2015. Failure to file timely objections will constitute a waiver of any appellate rights. *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).


Dated: August 6, 2015.                    By the Court,

                                          s/ Cynthia Reed Eddy
                                          Cynthia Reed Eddy
                                          United States Magistrate Judge


cc: Counsel of Record via CM-ECF